1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
1160 Battery Street East, Suite 100
San Francisco, CA 94111
Tel: (415) 373-1671
Email: aapton@zlk.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OFIR SCHWEIGER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ULTRA CLEAN HOLDINGS, INC., JAMES SCHOLHAMER, and SHERI SAVAGE,<br><br>Defendants. | Case No.  3:25-cv-02768<br><br>CLASS ACTION<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>DEMAND FOR JURY TRIAL |

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Ofir Schweiger ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, alleges in this Complaint for violations of the federal securities laws (the "Complaint") the following based upon knowledge with respect to his own acts, and upon facts obtained through an investigation conducted by his counsel, which included, *inter alia*: (a) review and analysis of relevant filings made by Ultra Clean Holdings, Inc. ("Ultra Clean" or the "Company") with the United States Securities and Exchange Commission (the "SEC"); (b) review and analysis of Ultra Clean's public documents, conference calls, press releases, and stock chart; (c) review and analysis of securities analysts' reports and advisories concerning the Company; and (d) information readily obtainable on the internet.

Plaintiff believes that further substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery. Most of the facts supporting the allegations contained herein are known only to the defendants or are exclusively within their control.

## NATURE OF THE ACTION

1.    This is a federal securities class action on behalf of all investors who purchased or otherwise acquired Ultra Clean securities between May 6, 2024 to February 24, 2025, inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws (the "Class").

2.    Defendants provided investors with material information concerning the elevated demand from Chinese original equipment manufacturers (OEMs) and in the general Chinese domestic market for Ultra Clean's products throughout the fiscal year 2024. Defendants' statements included, among other things, reports of increased demand for the Company's products and services in the domestic Chinese market and reports of increased revenue, including revenue doubling with no signs of slowing down, due to the elevated demand in China for Ultra Clean's products and services.

3.    Defendants provided these overwhelmingly positive statements to investors while, at the same time, disseminating materially false and misleading statements and/or concealing material adverse facts concerning the true state of the demand for Ultra Clean's products and

services in the domestic Chinese market; notably, that the Company was facing a customer ramp issue with one of its critical customers, as well as a combination of inventory and demand corrections, which, ultimately, caused weakness for Ultra Clean in China.

4.      On February 24, 2025, Ultra Clean published fourth quarter and full year 2024 fiscal results and hosted an associated earnings call, where the Company's executives revealed that Ultra Clean was facing "demand softness" in China. In particular, Ultra Clean was facing decreased demand in China due to extended qualification timelines and inventory absorption.

5.      Investors and analysts reacted immediately to these revelations. The price of Ultra Clean's common stock declined dramatically. From a closing market price of $36.06 per share on February 24, 2025, Ultra Clean's stock price fell to $25.90 per share on February 25, 2025, a decline of over 28% in the span a single day.

<u>**JURISDICTION AND VENUE**</u>

6.      Plaintiff brings this action, on behalf of himself and other similarly situated investors, to recover losses sustained in connection with Defendants' fraud.

7.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. §78aa.

9.      Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b), as Defendant Ultra Clean is headquartered in this District and a significant portion of its business, actions, and the subsequent damages to Plaintiff and the Class, took place within this District.

10.     In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications, and the facilities of the national securities exchange.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## THE PARTIES

11.    Plaintiff purchased Ultra Clean common stock at artificially inflated prices during the Class Period and was damaged upon the revelation of the Defendants' fraud. Plaintiff's certification evidencing his transaction(s) in Ultra Clean is attached hereto.

12.    Ultra Clean Holdings, Inc. is a Delaware corporation with its principal executive offices located at 26462 Corporate Avenue, Hayward, California 94545. During the Class Period, the Company's common stock traded on the NASDAQ Stock Market (the "NASDAQ") under the symbol "UCTT."

13.    Defendant James Scholhamer ("Scholhamer") was, at all relevant times, the Director and Chief Executive Officer of Ultra Clean.

14.    Defendant Sheri Savage ("Savage") was, at all relevant times, the Senior Vice President of Finance and Chief Financial Officer of Ultra Clean.

15.    Defendants Scholhamer and Savage are sometimes referred to herein as the "Individual Defendants." Ultra Clean together with the Individual Defendants are referred to herein as the "Defendants."

16.    The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Ultra Clean's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. Each Individual Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

17. Ultra Clean is liable for the acts of the Individual Defendants, and its employees under the doctrine of *respondeat superior* and common law principles of agency as all the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

18. The scienter of the Individual Defendants, and other employees and agents of the Company are similarly imputed to Ultra Clean under *respondeat superior* and agency principles.

## SUBSTANTIVE ALLEGATIONS

### A.    Company Background

19. Ultra Clean is a developer and supplier of subsystems, components, parts, and ultra-high purity cleaning and analytical services primarily for the semiconductor industry. Ultra Clean offers its customers an integrated outsourced solution for major subassemblies, improved design-to-delivery cycle times, design for manufacturability, prototyping and part and component manufacturing, as well as tool chamber parts cleaning and coating, and micro-contamination analytical services.

20. The Company reports results for two segments: Products and Services. The Products segment primarily designs, engineers, and manufactures production tools, components and parts, and modules and subsystems for the semiconductor and display capital equipment markets. Products include chemical delivery modules, frame assemblies, gas delivery systems, fluid delivery systems, precision robotics, process modules as well as other high-level assemblies. The Services segment provides ultra-high purity parts cleaning, process tool part recoating, surface encapsulation and high sensitivity micro contamination analysis primarily for the semiconductor device makers and wafer fabrication equipment ("WFE") markets.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**B.    The Defendants Materially Misled Investors Concerning the Demand for Ultra Clean's Products and Services in Domestic China During Fiscal Year 2024**

*May 6, 2024*

21.    On May 6, 2024, Ultra Clean published first quarter 2024 results, particularly noting the Company's recent success in China. During the associated earnings call, CEO Scholhamer stated, in pertinent part:

> We reported a solid first quarter on the top and bottom lines. The increase in orders above midpoint was driven by ongoing strength in the domestic China market and High Bandwidth Memory and advanced packaging demand supporting AI. Earnings came in above our guided range due to higher volume, favorable mix and our ongoing focus on site efficiencies.
>
> ***Elevated domestic China demand underscores the importance that the Chinese government and chip industry has placed on becoming self-sufficient.*** Chinese chip companies are rapidly investing in new semiconductor factories to advance their nation's capabilities and address export controls imposed by the U.S. and its allies.

[Emphasis added].

22.    Then, during the question-and-answer segment of the earnings call, CEO Scholhamer responded to an analyst from Needham & Company, in relevant part:

> <Q: Yu Shi – Needham & Company, LLC – Senior Analyst> Jim, Sheri, congrats on the solid results and very strong guidance. I think, Jim, in your prepared remarks, I got the sense that your strength in Q1 seems to be primarily due to some of the upside you see with your Chinese OEM customers, and I did notice that in your PowerPoint that the category called other OEM, meaning outside of Lam and Applied, seems to have seen the most amount of growth.
>
> But it gets a little bit hard for me to reconcile, because China revenue has been like a single-digit of percent of your total revenue. So how do I think about your actual exposure to the Chinese OEMs at this point?
>
> <A: James P. Scholhamer – CEO> Yes, Charles. Yes, you're right. ***The Chinese revenue is -- directly to the OEMs, is relatively small, but it's actually doubled, I think, over the last 2 or 3 quarters and then nearly doubled again.*** So -- and if you think about our overdrive on revenue, I mean that was about half of it. The other half was on deposition tools that are used in the AI applications.

[Emphasis added].

<u>*July 25, 2024*</u>

23.    On July 25, 2024, Ultra Clean published second quarter 2024 results, touting the Company's success in China. As part of the associated earnings call, CEO Scholhamer stated, in relevant part:

> We continue to perform well in 2024, with second quarter revenue and earnings at the high end of our guided range. ***We saw strength in both Products and Services across all geographies and in particular, elevated equipment spending within the domestic China market and customers supplying high bandwidth memory and equipment supporting advanced packaging for AI applications.***

[Emphasis added].

24.    Also during the earnings call, CFO Savage stated, in pertinent part:

> As Jim mentioned, total company-wide revenue was up quarter-over-quarter across all geographies and major customers, ***most notably in the domestic China market***.

[Emphasis added].

25.    Then, during the question-and-answer segment of the earnings call, CEO Scholhamer responded to questions from an analyst at Needham & Company, LLC, in relevant part:

> <Q: Yu Shi – Needham & Company, LLC – Senior Analyst> Congrats on the consistent execution. I'm glad to see the total revenue retaking that $500 million. Well, we haven't seen that since, I guess, fourth quarter 2022, right? But I want to follow up on a few things that Krish just asked. First thing about China. I know that you talked about China, that's your direct China exposure somewhere around 10% sounds like. Going into the second half of this year, how is that business going to trend? Do you see more consistent, half-over-half growth, or any chance to see any inflection, maybe level off, start to decline? What's the scenario there, what you're seeing in the China business from this point and forward?

> <A: James P. Scholhamer – CEO> Yes. Yes, sure, Charles. I mean, as I've said last quarter, we expect this high level of business to continue in China through the rest of the year. And it's really been a huge benefit for us to have this unusual footprint that we have in China that most suppliers do not have. ***But we do not see it really tailing off. But I don't think that's the whole story. We're also seeing strength in other parts of our diversified business that's really helping us kind of move forward. So when you think about detractors or what might degrade, we're not***

6

***looking at that. I think we're looking at things pretty much staying how they are, and we're looking more at a potential upside to certain areas as we go forward.***

[Emphasis added].

<u>*October 28, 2024*</u>

26.    On October 28, 2024, Ultra Clean published third quarter 2024 results and an outlook for the fourth quarter, claiming China would keep growing as the local manufacturing continued to ramp. The fourth quarter outlook was presented as follows, in relevant part:

**Fourth Quarter 2024 Outlook**
The Company expects revenue in the range of $535 million to $585 million. The Company expects GAAP diluted net income per share to be between $0.06 and $0.26 and non-GAAP diluted net income per share to be between $0.34 and $0.54.

27.    As part of the press release, CEO Scholhamer stated, in pertinent part:

UCT's third quarter results came in above expectations driven by broader equipment demand for AI infrastructure build out and sustained domestic China market spending. The rationale for significant long-term investment in WFE remains strong. UCT's vertical integration capabilities and strategic manufacturing network provide a competitive edge, and should enable us to increase share as demand expands.

28.    The same day, Ultra Clean hosted an associated earnings call, wherein CEO Scholhamer specifically discussed the Company's "strength" in China, in relevant part:

Turning to China. Revenue from our Shanghai manufacturing facility supporting local Chinese OEMs remained elevated. Recent conversations with local customers and our expectation that regional fabs will continue to expand and new ones will come online, supported by local government investments, leads us to believe that this will - higher level of spend will continue into 2025.  We will continue to meet regularly with our local Chinese customers and watch for any change in sentiment or spending patterns that could alter our opinion.

*        *        *

This has been continued strength. And I just actually met with the CEOs in China, and they continue to think that that's going to stay strong through the year and through the next year as well.

*        *        *

We have 2 main customers there [in China], and 1 is dealing with some internal issues and quality and it's not our issue. Another 1 is growing faster. So we had - it is lumpiness, but it's nothing to be concerned about the long-term prospects.

29.     The above statements in Paragraphs 21 to 28 were false and/or materially misleading. Defendants created the false impression that they possessed reliable information pertaining to the demand for Company's products and services in the domestic Chinese market. In truth, Ultra Clean's optimistic reports of significant growth and increased earnings potential fell short of reality as they failed to incorporate the impending weaker demand due to issues one of its major customers was facing, extended qualification timelines, and inventory absorption, particularly given the volatility of the semiconductor industry.

**C.     The Truth Emerges when Ultra Clean Disclosed that the "Elevated Demand" in the Chinese Domestic Market was a Temporary Consequence of the Semiconductor Industry's Volatility**

*February 24, 2025*

30.     On February 24, 2025, Ultra Clean published fourth quarter and full year 2024 results, in pertinent part:

**Fourth Quarter 2024 GAAP Financial Results**
Total revenue was $563.3 million. Products contributed $503.5 million and Services added $59.8 million. Total gross margin was 16.3%, operating margin was 4.6%, and net income was $16.3 million or $0.36 per diluted share. This compares to total revenue of $540.4 million, gross margin of 17.3%, operating margin of 4.7%, and net loss of $(2.3) million or $(0.05) per diluted share, in the prior quarter.

**Full Year 2024 Non-GAAP Financial Results**
On a non-GAAP basis, the company reported gross margin of 17.5%, operating margin of 6.9%, and net income of $65.2 million or $1.44 per diluted share. This compares to gross margin of 16.6%, operating margin of 4.9%, and net income of $25.2 million or $0.56 per diluted share in the prior year.

**First Quarter 2025 Outlook**
The Company expects revenue in the range of $505 million to $555 million. The Company expects GAAP diluted net income (loss) per share to be between $(0.11) and $0.09 and non-GAAP diluted net income per share to be between $0.22 and $0.42.

31.     The same day, the Company hosted an associated earnings call, disclosing that the Company was experiencing some "unexpected softness" in China. As part of the earnings call, CFO Savage stated, in relevant part:

We are experiencing some unexpected demand softness from our in China, for China business relating to extended qualification time lines and some inventory digestion.

Right now, our focus remains on driving efficiencies and keeping a close eye on our cost structure to ensure we continue delivering value to our stakeholders. We are very energized by the many opportunities we see heading our way. UCT's long-standing leadership role in the semiconductor equipment manufacturing space will play a pivotal role in advancing the industry to new heights in the coming years.

And now I'll switch to a review of our financial performance and outlook, where I will be referring to non-GAAP numbers only. For the fourth quarter, total revenue came in at $563.3 million compared to $540.4 million in the prior quarter. Revenue from Products increased to $503.5 million from $479 million last quarter due to increasing demand for advanced packaging applications and other AI-related processes, including CMP, which offset some softening from the domestic China market.

*     *     *

As mentioned earlier, the growth we saw last year supporting AI build-outs should stay around current levels with some up and downs as the industry prioritizes its spending patterns. We are seeing a reduction in demand from our domestic China customers as qualification periods are taking longer than originally planned, and we presume they are consuming inventory purchased in 2024.

32.    Also during the earnings call, Ultra Clean's executives answered questions from analysts. In pertinent part:

<Q: Yu Shi – Needham & Company, LLC – Senior Analyst> I think so far, I heard the 3 -- probably 3 dependent issues related to China for China business. One, a little bit customer specific. It seems like one customer has some qualification ramp issues. Two, you also mentioned that there seems to be some softening of the China demand. But three, I think you said that there is a little bit of inventory excess that your Chinese customers are carrying right now. But the third one, I'm not exactly surprised because you guys were pretty transparent last year by saying you thought that some of the customers may be doing a little bit of stockpiling. But can you kind of rank order, I mean, among the top 3, which one are the ones that are causing most of the near-term air pockets? And really just want to understand relative to, let's say, a quarter ago, what has changed?

<A: Christopher S. Cook. – President of Products Business> Yes. So in -- by the way, thank you, Charles. This is Chris Cook. And I would rank those in order as you described them, actually, the customer-specific ramp issue that we expect to be resolved in the second quarter was a hit, followed by a blend of the inventory and demand corrections that we see. Obviously, to the extent that our customers burn

9

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

through that local inventory that shows up in reduced demand for us and excess inventory burn. So it's a combination of those 3 in that order.

<Q: Yu Shi – Needham & Company, LLC – Senior Analyst> Got it. So let's say, if we take out that China for China business, what would the guidance be like, I mean, for the ex China business from Q4 into Q1? Do you still see sequential growth? Or what's the picture there?

<A: Christopher S. Cook. – President of Products Business> No. I would say we're not growing sequentially. We're off. And as we expect those things to be resolved, we do expect for recovery in the second half, but we'll continue to see softness through the first half of the year.

<Q: Yu Shi – Needham & Company, LLC – Senior Analyst> No. Chris, I meant the ex China business, the non-China business, I was trying to ask, yes, from Q4 to Q1. What's embedded in your guidance? Are you -- sequential growth.

<A: Christopher S. Cook. – President of Products Business> Yes, sorry, I misunderstood the question. Yes, we're flattish.

<Q: Yu Shi – Needham & Company, LLC – Senior Analyst> Okay. Maybe last one for me. The gross margin for Q4 and seems like the implied gross margin guidance in Q1. Obviously, you don't really guide gross margin. I heard you talk about product versus service mix seems like a little bit lighter than you thought. But the product gross margin alone looks like a little bit lighter as well. What's the reason for that, the gross margin -- the weakness in the Products division?

<A: Sheri L. Savage – CFO & Senior VP of Finance> Yes, really, the key thing is the mix of the products that got shipped and where they got shipped from. So obviously, with China being a little bit lower, we started to see that in Q4, and that's a high-margin business. We also saw some of our other higher-margin products be a little bit lighter for the quarter. So also being at year-end, we did have some additional expenses surrounding just truing up some of our inventory and things like that. So that's what really affected it. We see it somewhat flat going into Q1. And we will continue to be looking at our cost structure with a close eye and make sure that we continue to help that as we move through the year as well.

33.     Investors and analysts reacted immediately to these revelations. The price of Ultra Clean's common stock declined dramatically. From a closing market price of $36.06 per share on February 24, 2025, Ultra Clean's stock price fell to $25.90 per share on February 25, 2025, a decline of over 28% in the span a single day.

34.     A number of well-known analysts who had been following Ultra Clean lowered their price targets in response to Ultra Clean's disclosures. For example, Oppenheimer, while

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

lowering their price target from $70 to $60, noted weakness in China and headwinds in Services from a struggling IDM customer.

35.     Similarly, Craig Hallum lowered their price target for Ultra Clean from $60 to $44. In pertinent part, Craig Hallum stated:

> Ultra Clean is off to a slower than expected start to 2025, driven primarily by a moderated business outlook for domestic China. The company is seeing some slower than expected customer ramps in the region, as well as softer end market demand and excess inventory levels that are being digested following a strong 2024.
>
> *       *       *
>
> Risks for UCTT
>
> • The semiconductor industry in general, and the markets in which Ultra Clean competes, are cyclical and highly competitive. In addition, the company is subject to evolving industry standards.
>
> • The company relies on a small number of customers for a significant portion of sales. In FY23 the company's top two customers accounted for 57.4% of total revenue.
>
> • The company is highly dependent on achieving new design wins and obtaining new customers to drive future growth and because of the lengthy sales cycles of many of Ultra Clean's products, the company may incur significant expenses before any revenue related to those products is generated.

36.     The fact that these analysts, and others, discussed Ultra Clean's shortfall and below-expectation projections suggests the public placed significant weight on Ultra Clean's prior revenue and sales estimates. The frequent, in-depth discussion of the demand for Ultra Clean's products and services in the domestic Chinese market shows that Defendants' statements during the Class Period were material.

**D.      Loss Causation and Economic Loss**

37.     During the Class Period, as detailed herein, Defendants made materially false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Ultra Clean's common stock and operated as a fraud or deceit on Class Period purchasers of Ultra Clean's common stock by materially misleading the investing public. Later, Defendants' prior misrepresentations and fraudulent conduct became apparent to the market, the price of Ultra Clean's common stock materially declined, as the prior artificial inflation

came out of the price over time. As a result of their purchases of Ultra Clean's common stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages under federal securities laws.

38.     Ultra Clean's stock price fell in response to the corrective event on February 24, 2025, as alleged *supra*. On February 24, 2025, information was disclosed that was directly related to the Defendants' prior misrepresentations and material omissions concerning the demand for Ultra Clean's products and services in the domestic Chinese market.

39.     In particular, on February 24, 2025, Ultra Clean published fourth quarter and full year 2024 fiscal results and hosted an earnings call to discuss these results in detail. During the earnings call, the Company disclosed that it was experiencing "unexpected softness" in China, the same market it had touted as experiencing "elevated demand," which the Company stated was not expected to decline and referenced as "continued strength" for Ultra Clean.

### E.     Presumption of Reliance; Fraud-On-The-Market

40.     At all relevant times, the market for Ultra Clean's common stock was an efficient market for the following reasons, among others:

(a)     Ultra Clean's common stock met the requirements for listing and was listed and actively traded on the NASDAQ during the Class Period, a highly efficient and automated market;

(b)     Ultra Clean communicated with public investors via established market communication mechanisms, including disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(c)     Ultra Clean was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace; and

(d)     Unexpected material news about Ultra Clean was reflected in and incorporated into the Company's stock price during the Class Period.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

41.     As a result of the foregoing, the market for Ultra Clean's common stock promptly digested current information regarding the Company from all publicly available sources and reflected such information in Ultra Clean's stock price. Under these circumstances, all purchasers of Ultra Clean's common stock during the Class Period suffered similar injury through their purchase of Ultra Clean's common stock at artificially inflated prices, and a presumption of reliance applies.

42.     Alternatively, reliance need not be proven in this action because the action involves omissions and deficient disclosures. Positive proof of reliance is not a prerequisite to recovery pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.

### F.     No Safe Harbor; Inapplicability of Bespeaks Caution Doctrine

43.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the material misrepresentations and omissions alleged in this Complaint. As alleged above, Defendants' liability stems from the fact that they provided investors with statements about the then-existing demand for Ultra Clean's products while at the same time failing to disclose *inter alia* softening demand.

44.     To the extent certain of the statements alleged to be misleading or inaccurate may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

45.     Defendants are also liable for any false or misleading "forward-looking statements" pleaded because, at the time each "forward-looking statement" was made, the speaker knew the "forward-looking statement" was false or misleading and the "forward-looking statement" was authorized and/or approved by an executive officer of Ultra Clean who knew that the "forward-looking statement" was false. Alternatively, none of the historic or present-tense statements made

13

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by the defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

## CLASS ACTION ALLEGATIONS

46.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Ultra Clean's common stock during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

47.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Ultra Clean's common stock were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Ultra Clean or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. As of January 24, 2025, there were approximately 45.1 million shares of the Company's common stock outstanding. Upon information and belief, these shares are held by thousands, if not millions, of individuals located throughout the country and possibly the world. Joinder would be highly impracticable.

48.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

49.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

50.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Ultra Clean;

(c)     whether the Individual Defendants caused Ultra Clean to issue false and misleading financial statements during the Class Period;

(d)     whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

(e)     whether the prices of Ultra Clean's common stock during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(f)     whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

51.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## COUNT I

### *Against All Defendants for Violations of*

### *Section 10(b) and Rule 10b-5 Promulgated Thereunder*

52.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

53.    This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

54.    During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon. Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Ultra Clean common stock; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Ultra Clean's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

55.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Ultra Clean's securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company.

56.    By virtue of their positions at the Company, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

57.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of the Company, the Individual Defendants had knowledge of the details of Ultra Clean's internal affairs.

58.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of the Company. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Ultra Clean's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Ultra Clean's common stock was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning the Company which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Ultra Clean's common stock at artificially inflated prices and relied upon the price of the common stock, the integrity of the market for the common stock and/or upon statements disseminated by Defendants, and were damaged thereby.

59.    During the Class Period, Ultra Clean's common stock was traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares

of Ultra Clean's common stock at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said common stock, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Ultra Clean's common stock was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Ultra Clean's common stock declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

60.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

61.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's common stock during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### *Against the Individual Defendants*

### *for Violations of Section 20(a) of the Exchange Act*

62.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

63.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about Ultra Clean's misstatements.

64.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information, and to correct promptly any public statements issued by Ultra Clean which had become materially false or misleading.

18

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

65.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Ultra Clean disseminated in the marketplace during the Class Period concerning the misrepresentations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Ultra Clean to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Ultra Clean's common stock.

66.    Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause Ultra Clean to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

67.    By reason of the above conduct, the Individual Defendants and/or Ultra Clean are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demand judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representatives;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

1

## DEMAND FOR TRIAL BY JURY

2    Plaintiff hereby demands a trial by jury.

3

4    Dated: March 24, 2025                  Respectfully submitted,

5                                           **LEVI & KORSINSKY, LLP**

6                                           /s/ Adam Apton

7                                           Adam M. Apton (SBN 316506)
                                            1160 Battery Street East, Suite 100
8                                           San Francisco, CA 94111
                                            Tel: (415) 373-1671
9                                           Email: aapton@zlk.com

10                                          *Attorneys for Plaintiff*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS