Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Movant and [Proposed]*
*Lead Counsel for the Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OFIR SCHWEIGER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ULTRA CLEAN HOLDINGS, INC., JAMES SCHOLHAMER, and SHERI SAVAGE,<br><br>Defendants. | Case No. 3:25-cv-02768-JSC<br><br>**MEMORANDUM OF LAW OF MOVANT ERGÜL İLASLAN IN OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS**<br><br><u>CLASS ACTION</u><br><br>Judge: Jacqueline Scott Corley<br>Hearing: July 3, 2025<br>Time: 10:00 a.m.<br>Courtroom: 8 – 19th Floor (San Francisco) |

Lead Plaintiff Movant Ergül İlaslan ("Movant" or "Mr. İlaslan") respectfully submits this Memorandum of Law in Opposition to Competing Motions to Appoint Lead Plaintiff and Approve Lead Plaintiff's Selection of Counsel.

## **INTRODUCTION**

Under the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), courts are to appoint as lead plaintiff the one with "the greatest financial stake in the outcome of the case, so long as he meets the requirements of Rule 23." *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 268-69 (3d Cir. 2001); *see also* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb)-(cc).

1

Here, four motions were filed by movants seeking appointment as lead plaintiff and approval of lead counsel.[1] Dkt. Nos. 19, 23, 26, and 30. Mr. İlaslan has triggered the PSLRA's most adequate plaintiff presumption as he has the largest financial interest and satisfies the typicality and adequacy requirements of Rule 23.

First, under *all four* of the *Olsten-Lax* factors used in this District to determine movants' financial stake, Mr. İlaslan has the greatest interest, having purchased and retained the most shares, expended the largest sum of funds, and incurred the greatest approximate loss:

| Movant | Gross Shares Purchased | Net Shares Purchased | Net Funds Expended | Approximate Loss[2] | |
|---|---|---|---|---|---|
| **Ergül İlaslan** | **1,500** | **1,500** | **$56,430.00** | **$23,580.00** | Dkt. No. 27-3 |
| Andrew Marchitto | 1,367 | 1,367 | $53,381.55 | $23,444.05 | Dkt. No. 23-3 |
| Lukas Stauskis | 1,185.5 | 1,185.5 | $44,536.42 | $18,573.07 | Dkt No. 20-3 |
| Matthew Haas | 239 | 239 | $8,991.00 | $3,757.08 | Dkt. No. 30-3 |

Second, as set forth in his opening papers, Mr. İlaslan has made a *prima facie* showing of adequacy and typicality under Rule 23, as his claims are representative of the class and he has submitted a certification affirming his willingness to serve as and carry out the responsibilities of class representative. *See* Dkt. 26 at 5-6. Further, Mr. İlaslan has 8 years of investing experience, holds a degree in Mechanical Engineering, and works as a Design Engineer. Dkt. No. 26 at 6.

Finally, the presumption that Movant is the "most adequate plaintiff" — *i.e.* the presumptive lead plaintiff — "may be rebutted only upon proof." 15 U.S.C. §78u-

---

[1] On June 6, 2025, Matthew Haas filed a statement of non-opposition to competing motions, recognizing that he "does not have the "largest financial interest" in this litigation within the meaning of the PSLRA." Dkt. No. 33.

[2] Applying the same lookback price of $21.90, the lowest price which creates the largest approximate losses, to all movants. Applying the lookback prices utilized by the movants in the opening papers, including Mr. İlaslan ($22.11, $21.9225, or $21.9026), provides the same ordering of approximate losses when applied to each movant's transactions.

MEMORANDUM OF LAW OF MOVANT ERGÜL İLASLAN IN OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS – 3:25-cv-02768-JSC

4(a)(3)(B)(iii)(II). Competing movants can offer no proof to rebut the presumption in favor of Mr. İlaslan.

For these reasons, the Court should grant Mr. İlaslan's motion in its entirety and deny the competing lead plaintiff motions.

## ARGUMENT

### I.  MR. İLASLAN HAS THE LARGEST FINANCIAL INTEREST.

The Ninth Circuit has explained that the PSLRA provides a sequential statutory process that the district court must follow in selecting the lead plaintiff. *Cavanaugh*, 306 F.3d at 729. After determining that notice of the action is appropriate and timely, the district court "must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order if and only if the presumptive lead plaintiff is found inadequate or atypical." *Id.* at 732. Importantly, "a straightforward application of the statutory scheme … provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case." *Id*.

To determine which movant has the greatest financial interest, courts in this District look to the *Olsten-Lax* factors, which are: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered." *Richardson v. TVIA, Inc.,* 2007 WL 1129344, at *3 (N.D. Cal. Apr. 16, 2007). Some courts place the greatest emphasis on the final factor, approximate losses suffered. *See id.; Perlmutter v. Intuitive Surgical, Inc.*, 2011 WL 566814, at *10 (N.D. Cal. Feb. 15, 2011) ("This [fourth and final factor] is the most determinative"); *In re Vicuron Pharma, Inc. Sec. Litig.,* 22 F.R.D. 508, 511 (E.D. Pa. 2004) (appointing lead plaintiff based on amount of financial loss); *Takara Trust v. Molex, Inc.*, 229 F.R.D. 577, 579 (N.D. Ill. 2005) (same); *Varghese v. China Senghuo Pharm. Holdings, Inc.,* 589 F.Supp. 2d 388, 295 (S.D.N.Y 2008) ("financial loss, the last factor, is the most important element of the test.").

In this Court, the second factor, net shares purchased, is considered determinative of which movant has the largest potential recovery, particularly when the artificial inflation is relatively constant (as here, where no corrective information is alleged to have entered the market prior to the truth's disclosure on February 24, 2025). *See In re Critical Path, Inc. Sec. Litig.*, 156 F.Supp.2d 1102, 1108 (N.D. Cal. 2001) (finding net shares purchased "determinative" of financial interest when the stock's inflation because of the alleged misrepresentations stayed constant throughout the class period); *In re Network Assocs., Inc. Sec. Litig.,* 76 F.Supp.2d 1017, 1027 (N.D. Cal. 1999) (concluding "the candidate with the most net shares purchased will normally have the largest potential damage recovery"); *Hodges v. Akeena Solar, Inc.*, 263 F.R.D. 528, 532 (N.D. Cal. 2009); *Eichenholtz v. Verifone Holdings, Inc.*, No. C07-06140MHP, 2008 WL 3925289, at *3 (N.D. Cal. Aug. 22, 2008) ("the court adopts the retained share methodology, which primarily looks to shares bought during the class period that are retained at the end of the class period."); *Mulligan v. Impax Lab'ys, Inc.*, 2013 WL 3354420, at *7 (N.D. Cal. July 2, 2013) (utilizing "retained shares" method); *Perlmutter*, 2011 WL 566814, at *6 ("looking exclusively to the number of shares purchased during the class period that are also retained at the end of the class period is likely the most accurate reflection of a plaintiff's potential damages."); *Pio v. Gen. Motors Co.*, No. CIV. 14-11191, 2014 WL 5421230, at *4 (E.D. Mich. Oct. 24, 2014) ("some courts have found the second factor-retained shares-to be the most determinative factor in approximating an investor's potential recovery.") (citing cases).

Some courts weigh all the factors. *See e.g., City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.*, No. 1:17-cv-1958, 2017 WL 6028213, at *2 (N.D. Ohio Dec. 5, 2017) ("As the approximate losses suffered is an element of the *Lax* test, this Court will weigh all four factors to select the lead plaintiff in this case. All four factors will be given equal weight."); *see also Pio v. Gen. Motors Co.*, No. CIV. 14-11191, 2014 WL 5421230, at *4 (E.D. Mich. Oct. 24, 2014) ("the first three factors provide the most objective measurement of a

MEMORANDUM OF LAW OF MOVANT ERGÜL İLASLAN IN OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS – 3:25-cv-02768-JSC

movant's stake in the litigation because the fourth factor is heavily dependent on the method applied and numbers chosen to calculate losses.").

Here, Mr. İlaslan purchased and retained 1,500 shares, expended $56,430, and lost approximately $23,580. As the chart above makes clear, no other movant purchased as many shares, retained as many shares, expended a larger amount, or lost a larger amount. Thus, whether looking at approximate total loss, greatest potential recovery, or weighing all the *Olsten-Lax* factors, Mr. İlaslan "has the biggest stake, [and] the court must appoint [Mr. İlaslan] as lead, unless it finds that he does not satisfy the typicality or adequacy requirements." *Cavanaugh*, 306 F.3d at 732.

## II.  MR. İLASLAN IS TYPICAL AND ADEQUATE

After determining which plaintiff has the greatest financial interest, the district court "must then focus its attention on *that* plaintiff and determine, based on the information provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular, those of 'typicality' and 'adequacy.'" *Cavanaugh*, 306 F.3d at 730 (emphasis in original). "If the plaintiff with the largest financial stake in the controversy provides information that satisfies these requirements, he becomes the presumptively most adequate plaintiff." *Id.* at 732.

Here, Mr. İlaslan has made a *prima facie* showing of adequacy and typicality under Rule 23. No competing movant has rebutted the presumption in favor of Movant.

Like all purported class members, Mr. İlaslan alleges that Defendants violated the Securities Exchange Act of 1934 by publicly disseminating false and misleading statements about Ultra Clean's business. Consequently, Mr. İlaslan purchased Ultra Clean securities at artificially inflated prices and was damaged thereby. These claims are premised on the same legal and remedial theories and are based on the same types of misstatements and omissions as the class' claims. Thus, Mr. İlaslan satisfies the typicality requirement. *See generally Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1137 (C.D. Cal. 1999). Further, Mr. İlaslan has demonstrated his adequacy as class representative by submitting a sworn certification affirming

MEMORANDUM OF LAW OF MOVANT ERGÜL İLASLAN IN OPPOSITION TO
COMPETING LEAD PLAINTIFF MOTIONS – 3:25-cv-02768-JSC

his willingness to serve as and carry out the responsibilities of class representative, including providing testimony at deposition and trial. Dkt. No. 27-2. Moreover, Mr. İlaslan has 8 years of investing experience, holds a degree in Mechanical Engineering, and works as a Design Engineer. Dkt. No. 26 at 6.

Based on his financial interest in the litigation and satisfaction of the Rule 23 requirements, Mr. İlaslan's motion should be granted in its entirety. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

### III. MOVANT'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select lead counsel, subject to approval by the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Cavanaugh*, 306 F.3d at 734 ("While the appointment of counsel is made subject to the approval of the court, the Reform Act clearly leaves the choice of class counsel in the hands of lead plaintiff."). The Court should interfere with Lead Plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Here, Mr. İlaslan has selected The Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel. Rosen Law has the resources and expertise to litigate this action efficiently and aggressively. As the firm's resume reflects, Rosen Law is highly experience in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors. Dkt. No. 27-4. Indeed, Rosen Law is one of the preeminent securities class action law firms in the country. Rosen Law has served as sole and co-lead counsel in numerous cases around the country and has recovered hundreds of millions of dollars for investors. In 2019 alone, the ISS Institutional Securities Class Action Services ranked Rosen Law as the Number 3 securities class action firm both in terms of amount recovered for investors and the number of settlements.

Rosen Law has been actively researching the Class's and Movant's claims, reviewing publicly available financial and other documents and gathering information in support of the claims against Defendants. As a result of the firm's experience in litigation involving issues similar to those raised in this action, Rosen Law has the skill and knowledge that will enable the

MEMORANDUM OF LAW OF MOVANT ERGÜL İLASLAN IN OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS – 3:25-cv-02768-JSC

firm to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving Mr. İlaslan's selection of Lead Counsel, the members of the class will receive the best legal representation available.

## IV. THE COMPETING MOTIONS SHOULD BE DENIED

The competing motions should be denied. As Mr. İlaslan has the greatest financial interest in the litigation and satisfies the requirements of Rule 23, he should be appointed Lead Plaintiff without further analyses. Indeed, "once the statutory presumption has attached, it cannot be rebutted through relative comparison." *Ferrari v. Gisch*, 225 F.R.D. 599, 610 (C.D. Cal. 2004); *Cavanaugh*, 306 F.3d at 732 (explaining that courts are not to "engage[] in a freewheeling comparison of the parties competing for lead plaintiff"). Indeed, that "the presumption is rebuttable does not mean that it may be set aside for any reason that the court may deem sufficient. Rather, the statute provides that the presumption 'may be rebutted only upon proof . . . that the presumptively most adequate plaintiff' does not satisfy the adequacy or typicality requirements of Rule 23.'" *Cavanaugh*, 306 F.3d at 729 n.2 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)).

## CONCLUSION

For the foregoing reasons, Movant respectfully requests that the Court issue an Order: (1) appointing Movant as Lead Plaintiff of the Class; (2) approving Rosen Law as Lead Counsel; and (3) denying the competing movants' requests. For the Court's convenience, a proposed order reflecting Movant's request is lodged as Dkt No. 26-1.

Dated: June 6, 2025

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/ Laurence Rosen, Esq.
Laurence M. Rosen, Esq. (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

MEMORANDUM OF LAW OF MOVANT ERGÜL İLASLAN IN OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS – 3:25-cv-02768-JSC

*Counsel for Movant and [Proposed] Lead Counsel for the Class*

MEMORANDUM OF LAW OF MOVANT ERGÜL İLASLAN IN OPPOSITION TO
COMPETING LEAD PLAINTIFF MOTIONS – 3:25-cv-02768-JSC

**CERTIFICATE OF SERVICE**

I, Laurence M. Rosen, hereby declare under penalty of perjury as follows:

I am the managing attorney of The Rosen Law Firm, P.A., with offices at 355 South Grand Avenue, Suite 2450, Los Angeles, CA 90071. I am over the age of eighteen.

On June 6, 2024, I electronically filed the following **MEMORANDUM OF LAW OF MOVANT ERGÜL İLASLAN IN OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on June 6, 2025.

/s/ Laurence Rosen
Laurence M. Rosen

9

MEMORANDUM OF LAW OF MOVANT ERGÜL İLASLAN IN OPPOSITION TO
COMPETING LEAD PLAINTIFF MOTIONS – 3:25-cv-02768-JSC