# EXHIBIT 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ANDY DEAN STEPHENS,

Plaintiff,

v.

MAPLEBEAR INC., et al.,

Defendants.

Case No.   24-cv-00465-EJD

**ORDER REGARDING MOTIONS TO APPOINT LEAD COUNSEL**

Re: ECF Nos. 28, 34, 40

The Court received three motions—filed by James Cheng, Tapiwanashe Nhundu, and Carlo Viscusi—to appoint lead plaintiff and select lead counsel in this securities class action governed by the Private Securities Litigation Reform Act of 1995 ("PSLRA") *See* Cheng Mot., ECF No. 28; Nhundu Mot., ECF No. 31; Viscusi Mot., ECF No. 34.  After the three opening motions were filed, Mr. Nhundu filed a statement of non-opposition to the competing motions for appointment as lead counsel, and the Court terminated his motion. *See* ECF No. 39.  Mr. Cheng and Mr. Viscusi subsequently filed a stipulation for their appointment as co-lead plaintiffs with their selected counsel as co-lead counsel.  *See* ECF No. 40.

Having reviewed the parties' submissions, the Court GRANTS Mr. Cheng's Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel.  All other competing motions for appointment of lead plaintiff and lead counsel, as well as the related stipulation, are DENIED.

Case No.: 24-cv-00465-EJD
ORDER APPOINTING LEAD PLAINTIFF AND LEAD COUNSEL

1

## I.     BACKGROUND

### A.     Factual Background

Defendant Maplebear Inc. d/b/a Instacart ("Instacart" or the "Company") provides online grocery shopping services to households in North America.  Compl. ¶ 2.  Defendants Fidji Simo, Nick Giovanni, Alan Ramsay, Apoorva Mehta, Jeffrey Jordan, Meredith Kopit Levien, Barry McCarthy, Michael Moritz, Lily Sarafan, Frank Slootman, and Daniel Sundheim (collectively, the "Individual Defendants" and with Instacart, "Defendants") were officers and directors of Instacart during the relevant period of September 19, 2023 through October 1, 2023.  *See id.* ¶¶ 1, 19–35.

The Complaint alleges that between August 25, 2023 and September 20, 2023, Instacart filed documents with the SEC in connection with its initial public offering ("IPO") that were negligently prepared and that contained materially false and misleading statements regarding the Company's business, operations, and prospects.  *Id.* ¶ 7.  More specifically, Defendants allegedly "made false and/or misleading statements and/or failed to disclose that: (i) Instacart had overstated the extent to which online grocery shopping and delivery habits among consumers were accelerating; (ii) Instacart had downplayed the extent of the competition that it faced in the online grocery shopping and delivery market; (iii) accordingly, Defendants overstated the Company's post-IPO growth, business, and financial prospects; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times."  *Id.*

On September 22, 2023, Reuters published an article noting Instacart's falling stock price, and on October 2, 2023, investment research firm Gordon Haskett published a statement about its doubts as to the business of online grocery delivery adoption.  *Id.* ¶¶ 8–10.  Instacart's stock price fell after each of these publications.  *Id.* ¶¶ 8–11.

### B.     Procedural History

Plaintiff Andy Dean Stephens initiated this action for violations of Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act") and of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") on January 25, 2024.  The claims under the Securities Act arise out of purchases of Instacart shares based on Defendants' registration statement and

Case No.: 24-cv-00465-EJD
ORDER APPOINTING LEAD PLAINTIFF AND LEAD COUNSEL
2

United States District Court
Northern District of California

prospectus issued in connection with the IPO, and the claims under the Exchange Act arise out of share purchases during the class period.

On March 25, 2024, the Court received three motions to appoint lead plaintiff and lead counsel—one each from James Cheng, Tapiwanashe Nhundu, and Carlos Viscusi.[1]  *See* ECF Nos. 28, 31, 34.  On April 8, 2024, Mr. Nhundu filed a statement of non-opposition to the competing motions for lead plaintiff.  *See* ECF No. 39.  Later that day, Mr. Cheng and Mr. Viscusi filed a stipulated request for the Court to appoint them as co-lead plaintiffs, with their selected law firms of Levi & Korsinsky LLP and Pomerantz LLP as co-lead counsel.  *See* ECF No. 40.  Defendants objected to the stipulation as procedurally improper.  *See* ECF No. 42.  The Court heard oral argument on the matter on May 30, 2024.  *See* ECF No. 46.

## II.    LEGAL STANDARD

The Private Securities Litigation Reform Act of 1995 ("PSLRA") sets forth processes for the selection of lead plaintiff in securities class actions.  *See* 15 U.S.C. § 78u-4(a)(3).  First, the plaintiff who files the initial action must publish, within 20 days of the filing, a notice informing members of the purported class of their right to file a motion for appointment as lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(A)(i).  Any member of the purported class may move to serve as lead plaintiff.  *Id.* § 78u-4(a)(3)(A)(i)(II).  To aid the court in its determination, each proposed lead plaintiff must submit a sworn "certification" setting forth certain facts designed to assure the court that the plaintiff (1) has suffered more than a nominal loss, (2) is not a professional litigant, and (3) is otherwise interested and able to serve as a class representative.  15 U.S.C. § 78u-4(a)(2)(A).

It is the Court's responsibility to "appoint the most adequate plaintiff as lead plaintiff."  15 U.S.C. § 78u-4(a)(3)(B)(ii).  There is a rebuttable presumption that the most adequate plaintiff is a person or group of persons who:

> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>
> (bb) in the determination of the court, has the largest financial interest

---

[1] Mr. Viscusi is represented by Pomerantz LLP, which also represents the named plaintiff, Mr. Stephens.  Mr. Stephens has not filed a motion for appointment as lead plaintiff.

in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

In sum, there is a "simple three-step process" to identify a lead plaintiff. *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002). The first step is the initial plaintiff's publication of the pendency of the action, the claims made, and the purported class period. *See id.* In the second step, the Court evaluates the alleged losses of the various movant plaintiffs, and selects as the presumptive lead plaintiff the individual who (1) has the largest financial interest in the relief sought by the class and (2) satisfies the requirements of Federal Rule of Civil Procedure 23, "in particular those of 'typicality' and 'adequacy.'" *Id.* at 729–30. "The third step of the process is to give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Id.* at 730. Such rebutting plaintiffs must provide "proof . . . that the presumptive lead plaintiff (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Once appointed, the lead plaintiff has the right, subject to court approval, to "select and retain counsel to represent the class." 15 U.S.C. § 78u–4(a)(3)(B)(v). "[T]he district court should not reject a lead plaintiff's proposed counsel merely because it would have chosen differently." *Cohen v. U.S. Dist. Court*, 586 F.3d 703, 711 (9th Cir. 2009) (citation omitted). "[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice." *Id.* at 712 (citations omitted).

## III.   DISCUSSION

Two competing motions for lead plaintiff remain before the Court following Mr. Nhundu's statement of non-opposition to the motions submitted by Mr. Cheng and Mr. Viscusi. Although Mr. Cheng and Mr. Viscusi have filed a stipulated request to be appointed co-lead plaintiffs with co-lead counsel, the Court has a duty to the prospective class to appoint the most adequate plaintiff as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii). The Court will therefore evaluate the

Case No.: 24-cv-00465-EJD
ORDER APPOINTING LEAD PLAINTIFF AND LEAD COUNSEL
4

competing motions under the three-step analysis described above for determination of the most adequate lead plaintiff, and then turn to the appointment of lead counsel.

### A.     Lead Plaintiff

#### 1.      Step 1:  Publication by Initial Plaintiff

Mr. Stephens initiated this action on January 25, 2024, and published the required notice on February 9, 2024.  The first step of the analysis is met.

#### 2.      Step 2:  Largest Financial Interest and Rule 23(a) Analysis

##### a.      Largest Financial Interest

"In calculating a movant's financial interest, courts typically consider four factors, often referred to as the *Lax-Olsten* factors: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period." *Peters v. Twist Bioscience Corp.*, No. 22-cv-08168, 2023 WL 4849431, at *3 (N.D. Cal. July 28, 2023) (quoting  *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998)).  The Court addresses the factors in turn.

###### i.      Number of Shares Purchased During Class Period

Mr. Cheng purchased 15,000 shares during the class period, while Mr. Viscusi purchased 3,000.  *See* Decl. of Adam M. Apton in Supp. of Cheng Mot. ("Apton Decl."), Exh. B, ECF No. 28-3; Decl. of Jennifer Pafiti in Supp. of Viscusi Mot. ("Pafiti Decl."), Exh. A, ECF No. 34-3.

###### ii.      Number of Net Shares Purchased During Class Period

Mr. Cheng purchased and sold 15,000 purchased shares during the class period, and thus purchased net 0 shares.  *See* Apton Decl., Exh. B.  Mr. Viscusi purchased 3,000 shares during the class period and sold none in that time, and thus purchased 3,000 net shares.  *See* Pafiti Decl., Exh. A.

###### iii.      Total Net Funds Expended During Class Period

Mr. Cheng purchased $615,000 in shares and sold $429,768.25 during the class period, and his net funds expended in that time is thus $185,231.75.  *See* Apton Decl., Exh. B.  Mr. Viscusi

Case No.: 24-cv-00465-EJD
ORDER APPOINTING LEAD PLAINTIFF AND LEAD COUNSEL
5

United States District Court
Northern District of California

expended $109,200 in net funds during class period when he purchased the 3,000 shares. *See* Pafiti Decl., Exh. A.

### iv. Approximate Losses Suffered During Class Period

The final *Lax-Olsten* factor—the approximate losses suffered during the class period—commands the most weight. *See, e.g.*, *Peters*, 2023 WL 4849431, at *4 (citing *Weston v. DocuSign, Inc.*, 2022 WL 1301770, at *2 (N.D. Cal. Apr. 18, 2022) ("The weight of authority puts the most emphasis on the competing movants' estimated losses . . . .")). In evaluating approximate losses, courts must use "accounting methods that are both rational and consistently applied." *Cavanaugh*, 306 F.3d at 730. "Most courts in this district use the 'last in, first out' ("LIFO") accounting method to calculate estimated losses." *Peters*, 2023 WL 4849431, at *4 (citing *Scheller v. Nutanix, Inc.*, 2021 WL 2410832, at *4 (N.D. Cal. June 10, 2021); *Weston*, 2022 WL 1301770, at *2). Additionally, following the Supreme Court's holding in *Dura Pharmaceuticals v. Broudo*, 544 U.S. 336, 346 (2005), that a plaintiff alleging securities fraud must "prove that the defendant's misrepresentation (or other fraudulent conduct) proximately caused the plaintiff's economic loss," district courts have generally excluded losses incurred from pre-disclosure stock sales. *See, e.g.*, *Xu v. FibroGen, Inc.*, No. 21-cv-02623 2021 WL 3861454, at *5 (N.D. Cal. Aug. 30, 2021) ("In response to *Dura*, many district courts—including this one—have chosen 'not to consider losses resulting from stock trades that occurred prior to any disclosure of the defendant's fraud' when evaluating potential plaintiffs' financial interests in the litigation.").

Here, the alleged disclosures were (1) the Reuters article published on September 22, 2023 (*i.e.*, during the class period of September 19, 2023 through October 1, 2023) and (2) the October 2, 2023 coverage from investment research firm Gordon Haskett. *See* Compl. ¶¶ 1, 52–57.

Mr. Cheng's losses under the Securities Act—*i.e.*, the losses traceable to alleged misstatements in Defendant's offering documents, such as the registration and prospectus— total $20,231.75, and his losses under the Exchange Act based on share purchases during the class period total $185,231.65 under the *Dura* standard. *See* Apton Decl., Exh. B; *see also* Cheng Mot.

United States District Court
Northern District of California

6. Mr. Viscusi's Securities Act losses total $26,279, and his Exchange Act losses are $33,769. *See* Pafiti Decl., Exh. A; *see also* Viscusi Mot. 9.

### v.   Conclusion Re: Largest Financial Interest

The Court finds that Mr. Cheng has the largest financial interest in the relief sought by the class. In considering the most important factor of approximate loss, Mr. Viscusi appears to have about $6,000 more than Mr. Cheng in Securities Act losses, but Mr. Cheng has about $150,000 in Exchange Act losses, which tips the scale well toward Mr. Cheng. Mr. Cheng also purchased 12,000 more shares than Mr. Viscusi during the class period and expended $185,231.75 in net funds compared to Mr. Viscusi's $109,200 (although Mr. Viscusi purchased more net shares during the class period).

### b.   Rule 23 Typicality and Adequacy

The Rule 23(a)(3) typicality requirement is satisfied when a proposed class representative "has suffered the same injuries as other class members as a result of the same conduct by defendants and has claims based on the same legal issues." *Westley v. Oclaro, Inc.*, No. C–11–2448, 2011 WL 4079178, at *3 (N.D. Cal. Sept. 12, 2011). Only a "*prima facia* showing of typicality and adequacy" is required at the lead plaintiff selection stage. *Deinnocentis v. Dropbox, Inc.*, No., 19-cv-06348, 2020 WL 264408, at *4 (N.D. Cal. Jan. 16, 2020).

Mr. Cheng has made the necessary *prima facie* showing here. With respect to typicality, Mr. Cheng, like all other putative class members, purchased Instacart stock during the class period at allegedly artificially inflated prices due to Defendants' alleged misrepresentations. As for the adequacy requirement, Mr. Cheng does not appear to have any conflicts of interests with other class members, and his substantial stake in the litigation will be a strong incentive to litigate vigorously on behalf of the class. *See* Decl. of James Cheng ("Cheng Decl.") ¶ 3, ECF No. 28-5.

Because Mr. Cheng has the largest financial interest in the class relief sought, and meets the Rule 23 requirements of typicality and adequacy, the Court finds that Mr. Cheng qualifies as the presumptive lead plaintiff under the PSLRA. *See In re Cavanaugh*, 306 F.3d at 730.

Case No.: 24-cv-00465-EJD
ORDER APPOINTING LEAD PLAINTIFF AND LEAD COUNSEL
7

### 3. Step 3: Opportunity to Rebut Presumptive Lead Plaintiff's Rule 23 Showing

Because no member of the putative class has sought to rebut Mr. Cheng's showing that he satisfies the Rule 23 typicality and adequacy requirements, this third step is met.

### B. Lead Counsel

Mr. Cheng has selected and retained the law firm Levi & Korsinsky, LLP as the proposed lead counsel for the class. *See* Cheng Decl. ¶ 6. The Court has reviewed the firm's resume, and is satisfied that Mr. Cheng has made a reasonable choice of counsel. *See* Apton Decl., Exh. E; *Isaacs v. Musk*, No. 18-CV-04865-EMC, 2018 WL 6182753, at \*4 (N.D. Cal. Nov. 27, 2018) (noting that Levi & Korsinsky, LLP "is experienced in securities fraud litigation and has been appointed Lead Counsel in other securities class actions").

The Court notes that although Mr. Cheng and Mr. Viscusi stipulated to be co-lead plaintiffs with co-lead counsel, the Court is not persuaded by the movants' arguments—presented at the hearing on these motions—that this matter is of such complexity that it requires multiple firms acting as lead counsel. *See, e.g.*, *Melucci v. Corcept Therapeutics Inc.*, No. 19-cv-01372, 2019 WL 13175840, at \*1 (N.D. Cal. July 2, 2019) ("In the interest of a cost-effective resolution of the instant case, the Court finds it excessive to appoint two law firms and two co-lead Plaintiffs in this single case."). The Court will therefore grant Defendants' objection—which is made only with respect to the stipulation process, and does not take any position on the movants' individual motions—and deny the stipulation for appointment of co-lead plaintiffs and co-lead counsel.

## IV. CONCLUSION

For the foregoing reasons, the Court hereby ORDERS that:

1. James Cheng's Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel, ECF No. 28, is GRANTED, such that:

   a. Mr. Cheng is appointed as lead plaintiff in this action; and

   b. Levi & Korsinsky is appointed as lead counsel.

2. Carlo Viscusi's Motion to Appoint Lead Plaintiff and Lead Counsel, ECF No. 34, is DENIED.

Case No.: 24-cv-00465-EJD
ORDER APPOINTING LEAD PLAINTIFF AND LEAD COUNSEL

United States District Court
Northern District of California

3. Mr. Cheng and Mr. Viscusi's Joint Stipulation Appointing James Cheng and Carlo J. Viscusi as Co-Lead Plaintiffs, ECF No. 40, is DENIED.

**IT IS SO ORDERED.**

Dated: July 1, 2024

EDWARD J. DAVILA
United States District Judge

United States District Court
Northern District of California

Case No.: 24-cv-00465-EJD
ORDER APPOINTING LEAD PLAINTIFF AND LEAD COUNSEL
9